IN THE SUPREME COURT OF THE STATE OF DELAWARE

MARLENA L. DAY, §
§ No. 132, 2017
Plaintiff Below, §
Appellant, § Court Below: Superior Court of
§ the State of Delaware
v. §
§ CA No. N15C-06-277
WILCOX LANDSCAPING, INC., §
CARROW CONSTRUCTION, LLC §
and SLEEPY HOLLOW LAWN §
CARE & LANDSCAPING, INC., §
§
Defendants Below, §
Appellees. §

Submitted: February 7, 2018
Decided: May 2, 2018

Before **STRINE**, Chief Justice; **VALIHURA, VAUGHN, SEITZ** and **TRAYNOR** Justices.

# O R D E R

On this 2nd day of May 2018, upon consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1)     The Appellant, Marlena Day, was injured when she slipped and fell during a snow storm.   She brought suit against the Appellees, claiming that her injuries were proximately caused by negligence on their part.   The Superior Court granted summary judgment for Appellees, ruling that the continuing storm doctrine was a defense to the Appellant's claims of negligence.   Ms. Day appeals that ruling.

(2) On January 21, 2014, a winter storm hit Newark, Delaware. According to weather records, snow was falling almost continuously from approximately 9:18 a.m. through the early morning hours on January 22. In total, about eleven inches of snow fell. No snow or ice was present in the Newark area before the January 21 storm.

(3) Day was a Sallie Mae employee working at the company's Newark office building. On January 21 she arrived to work around 8:00 a.m. before the snow began. Sometime around noon she decided to leave work and drive home before the weather and road conditions worsened. When she walked outside to leave it was snowing. She recalled the parking lot "looked like a sheet of ice." As she stepped off the sidewalk and into the parking lot she slipped and fell, injuring her right knee.

(4) Sallie Mae contracted with Appellee Wilcox Landscaping, Inc., to perform snow and ice removal at Sallie Mae's Newark office building. Under their agreement, Wilcox was to remove snow "from roadways and parking areas [by] plowing, clearing, and salting of these areas to allow tenants to exit from the property." In turn, Wilcox sub-contracted with Appellees Carrow Construction, LLC, and Sleepy Hollow Lawn Care & Landscaping, Inc., to provide snow and ice removal as Wilcox directed.

(5) Day filed suit against Wilcox, and later amended her complaint to include Carrow and Sleepy Hollow, alleging negligence for their failure to: maintain the premises in a safe condition; inspect the premises for dangerous conditions; warn others of dangerous conditions that existed; and act with reasonable care in clearing the parking lot of snow and ice. Appellees filed motions for summary judgment, arguing that under the continuing storm doctrine their actions were reasonable during the on-going snow storm. The Superior Court granted the motions, finding that the continuing storm doctrine applied. This appeal followed.

(6) "This Court reviews *de novo* the Superior Court's grant or denial of summary judgment 'to determine whether, viewing the facts in the light most favorable to the nonmoving party, the moving party has demonstrated that there are no material issues of fact in dispute and that the moving party is entitled to judgment as a matter of law.'"[1]

(7) Generally, a landowner owes a duty to business invitees to keep his premises safe for their benefit.[2] This duty includes keeping the property reasonably safe from accumulations of ice and snow that occur naturally.[3] An exception to this general duty is known as the continuing storm doctrine. Under that doctrine,

---

[1] *Brown v. United Water Del., Inc.*, 3 A.3d 272, 275 (Del. 2010) (quoting *Estate of Rae v. Murphy*, 956 A.2d 1266, 1269-70 (Del. 2008)).

[2] *Hamm v. Ramunno*, 281 A.2d 601, 603 (Del. 1971).

[3] *Monroe Park Apts., Corp. v. Bennett*, 232 A.2d 105, 108 (Del. 1967).

"in the absence of unusual circumstances, [a landowner] is permitted to await the end of the storm and a reasonable time thereafter to remove ice and snow from an outdoor entrance walk, platform, or steps."[4] The policy behind this exception is that changing weather conditions due to a storm make it "inexpedient and impracticable" for a landowner "to take earlier effective action" to clear their premises.[5]

(8) Recently, we reaffirmed our approval of the continuing storm doctrine in *Laine v. Speedway*.[6] In *Laine*, the plaintiff slipped on ice and fell near a gas pump on the premises of a combination convenience store-gas station. He had stopped at the store to fill up the gas tank in his employer's van. The ice was caused by a light, freezing rain which was then falling and continued throughout the day. The Superior Court granted defendant's motion for summary judgment based on the continuing storm doctrine.

(9) On appeal, this Court "[held] to the view . . . that it is reasonable for a landowner to wait until a storm ends and a reasonable time thereafter before removing natural accumulations of ice and snow created by a storm, in the absence of unusual circumstances."[7] We noted "customers are expected to be aware

---

[4] *Young v. Saroukos*, 185 A.2d 274, 282 (Del. Super. Ct. 1962).
[5] *Id.*
[6] *Laine v. Speedway, LLC*, 2018 WL 315584 (Del. Supr.).
[7] *Id.* *5.

themselves of the risks of falling [during an active storm] and to take care to protect themselves."[8]

(10)   Here, the facts of Day's case fall squarely within the continuing storm doctrine.   The evidence reflects snow starting as early as 9:18 a.m. on January 21, 2014, and falling throughout the day.   Day's fall occurred in the late morning sometime around noon when the snow was on-going.   There is no dispute about the weather conditions.

(11)   Day makes several arguments in an attempt to avoid the continuing storm doctrine.   She first argues that the continuing storm doctrine is limited to landowners and does not apply to the activities of independent contractors.   This argument would create an inconsistency between cases where the landowner itself performs snow and ice removal and those where the landowner hires someone to remove the snow and ice.   We see no reasonable basis for such a distinction.   The rule that a landowner acts reasonably in awaiting the end of the storm and a reasonable time thereafter to commence snow and ice removal applies both to the landowner and to those hired by the landowner to perform those services.

(12)   Day next contends the Appellees should be liable for their allegedly negligent conduct during the storm because they were contractually bound to

---

[8] *Id.*

5

perform snow removal services during the storm for the safety of Sallie Mae's employees. She argues that Appellees had a contractual duty to remove snow and ice "to allow tenants to exit from the property" as stated in the Sallie Mae–Wilcox contract; and that "the Sallie Mae/Wilcox contract . . . gave rise to the Appellees' duty . . . to exercise reasonable care under the circumstances."[9] However, previous cases have established that a landowner, or in this case an independent contractor, does not incur a duty to make premises safe by undertaking snow and ice removal activities while the storm is on-going.[10] Under the continuing storm doctrine, reasonable care during a storm is to await the storm's end and a reasonable time thereafter before removing ice and snow from the premises. If a landowner or its contractor voluntarily take steps to clear the premises before the storm ends, as the Appellees did here, they are still protected from liability. Day presents no persuasive argument to draw a distinction between Appellees' common law duty and their contractual duty.

(13) Day next contends the Appellees violated a duty of care owed to her under the Restatement (Second) of Torts § 324A. Section 324A addresses liability to third persons for an actor's "failure to exercise reasonable care to protect his

---

[9] Appellant's Opening Br. at 21–22.

[10] *Kovach v. Brandywine Innkeepers, Ltd. P'shp*, 2001 WL 1198944 (Del. Super Ct. Oct. 1, 2001; *Morris v. Theta Vest, Inc.* 2009 WL 693253 (Del. Super. Ct. Mar. 10, 2009), *aff'd* 2009 WL 2246777 (Del. Supr.).

undertaking" if that failure increases the risk of harm to another.[11] In support of this argument, Day presents evidence from her snow removal expert, Richard M. Balgowan, P.E., that Appellees improperly plowed the Sallie Mae parking lot thus leaving the parking lot in a more dangerous condition than had they not plowed.[12] This argument is but another attempt to circumvent the continuing storm doctrine. Attempts to begin removing snow and ice while the storm is still in progress should be encouraged. The principle that a person having a duty to remove snow and ice acts with reasonable care by waiting until the end of the storm to do so necessarily includes the principle that the person acts with reasonable care by beginning to remove snow and ice before the storm ends, even if those efforts are ineffective or may have contributed to the plaintiff's accident.

(14) Day's next argument is that public policy requires that the Appellees be held accountable for failing to fulfill their obligations for snow and ice removal under their contracts which resulted in serious injury to her. She argues Appellees will escape liability if the continuing storm doctrine is applied in this case, thus nullifying the service contract Appellees entered into with Sallie Mae. However,

---

[11] Restatement (Second) of Torts § 324A.
[12] Appellant's Opening Br. at 24.

our approval of the continuing storm doctrine in *Laine* necessarily rejects this public policy argument.

(15)  Day's final argument is that Appellees' negligence stems from their failure to take preventative or precautionary measures before the storm arrived. She argues Appellees had "an obligation . . . to exercise care *before* the event (pretreating surfaces with anti-icing chemicals)" because they had knowledge that a winter storm may be arriving .[13]  Mr. Balgowan opines this antecedent salting would have prevented the dangerous icing condition from occurring.  The argument that the duty of care requires pre-storm, precautionary activities to prevent snow and ice from forming was considered and rejected in *Buchanan v. TD Bank, N.A., et al.* in an order bearing the same date as this order.[14]

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is **AFFIRMED.**

BY THE COURT:

/s/ James T. Vaughn, Jr.
Justice

---

[13] Appellant's Opening Br. at 29.
[14] *Buchanan v. TD Bank, N.A., et al.*, Del. Supr., No. 173, 2017, *En Banc* (May 2, 2018) (ORDER).