## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| MUHAMMAD BAJWA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MILLCREEK SHOPPING )<br>CENTER LLC, and )<br>CUSTOM IMPROVERS, INC., )<br>)<br>Defendants. ) | C.A. No. N21C-08-110 PRW |

Submitted: July 14, 2023
Decided: August 15, 2023

*Upon Defendant Millcreek Shopping Center's Motion for Summary Judgment*
**DENIED.**

## MEMORANDUM OPINION AND ORDER

Marissa D. White, Esquire, LAW OFFICES OF WADE A. ADAMS, III, Newark, Delaware, *Attorney for Defendant Millcreek Shopping Center*.

Daniel P. Daly, Esquire, CASARINO CHRISTMAN SHALK RANSOM & DOSS, P.A., Wilmington, Delaware, *Attorney for Defendant Custom Improvers, Inc.*

James P. Hall, Esquire, PHILLIPS, MCLAUGHLIN & HALL, P.A., Wilmington, Delaware, *Attorney for Plaintiff Muhammad Bajwa*.

**WALLACE, J.**

Plaintiff Muhammad Bajwa brings this action against Defendants Millcreek Shopping Center LLC and Custom Improvers, Inc. (collectively, "Defendants") alleging that they negligently caused Mr. Bajwa to suffer serious personal injuries by, *inter alia*, failing to take reasonable measures to make the premises safe for business invitees.[1]

Accordingly, the complaint pleads one cause of action—that Defendants were negligent.[2]

Millcreek has now moved for summary judgment to extricate itself from this suit.[3]

## I. THE PARTIES

Mr. Bajwa is a resident of Newark.[4]  Millcreek is the owner of the property known as Millcreek Shopping Center located on Kirkwood Highway in New Castle.[5] Millcreek is a Delaware LLC.[6]

Custom Improvers, Inc. is a Delaware corporation headquartered in Newark,

---

[1]    Am. Compl.  ¶¶ 7-8 (D.I. 12).

[2]    *Id.* ¶¶ 6-11.

[3]    D.I. 30.  And as explained later, Customer Improvers has belatedly joined Millcreek in this effort.  Custom Improvers' Resp. ¶ 2 (D.I. 33).

[4]    Am. Compl. ¶ 1.

[5]    *Id.* ¶ 3.

[6]    *Id.* ¶ 2.

Delaware.[7]  It provides repair and maintenance services for the Millcreek Shopping Center property.[8]

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. FACTUAL BACKGROUND

On October 14, 2020, at about 1:00 p.m.,[9] Mr. Bajwa, while purportedly exercising due care in exiting his vehicle and as an invitee of the Millcreek Shopping Center, stepped into an unmarked hole in the parking lot.[10]  Mr. Bajwa says he suffered serious personal injuries as a direct and proximate result of stepping into that hole.[11]

There are certain undisputed facts: (1) Mr. Bajwa was dispatched to Millcreek Shopping Center to tow a car, (2) he stepped out of his vehicle onto the shopping center's parking lot surface without looking down, (3) when he stepped down his foot went into the hole and he fell, and (4) Mr. Bajwa suffered injury as a result.[12]

---

[7]  *Id.* ¶ 4.

[8]  D.I. 30, Ex C ("Jan. 27, 2023 Brian Altemus Depo. Tr.") at 31.

[9]  Am. Compl. ¶ 6.

[10]  D.I. 30, Ex. B ("Apr. 11, 2022 Muhammad Bajwa Depo Tr.") at 10.

> So I parked my truck over there at the parking lot, right.  As soon as I opened my door and stepped down, there was, like, a big hole.  And I put my, like, I step out, and my feet, like, goes down straight down to that hole, my left feet.  And then I, like, it was like -- actually, ma'am, to be honest with you, my English is okay, good, but not very, very good.  So that's why. So I will try to make you understand.  So I fell down, and then, you know, that's what happens.

[11]  *See id.* at 25-33.

[12]  *See* Apr. 11, 2022 Muhammad Bajwa Depo Tr. at 10-11, 15-16, 25-33.

## B. PROCEDURAL BACKGROUND

Mr. Bajwa filed his complaint in August 2021.[13] He then amended his complaint adding Custom Improvers as a defendant.[14]

Millcreek submitted this summary judgment motion suggesting that it had no duty to exercise reasonable care to Mr. Bajwa but if it did, it didn't breach any such duty.[15]

Argument was scheduled on this motion. But given the record developed and relied upon, it can be decided on the papers now before the Court.

## III. STANDARD OF REVIEW

Summary judgment is warranted upon a showing "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[16]

Thus, on the issue raised, the burden is on the moving party to demonstrate its prayer for summary judgment is supported by undisputed facts or an otherwise adequate factual record to support a judgment as a matter of law.[17] "If the motion is properly supported, then the burden shifts to the non-moving party to demonstrate

---

[13]  D.I. 1.

[14]  D.I. 12.

[15]  Millcreek's Mot. for Summ. J. ¶ 6. (D.I. 30).

[16]  Del. Super. Ct. Civ. R. 56(c).

[17]  *See CNH Indus. Am. LLC v. Am. Cas. Co. of Reading*, 2015 WL 3863225, at *1 (Del. Super. Ct. June 8, 2015).

that there are material issues of fact for resolution by the ultimate fact-finder."[18]

The Court may grant a motion for summary judgment when: "(1) the record establishes that, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact, and (2) in light of the relevant law and those facts, the moving party is legally entitled to judgment."[19]  The Court cannot grant summary judgment "[i]f . . . the record reveals that material facts are in dispute, or if the factual record has not been developed thoroughly enough to allow the Court to apply the law to the factual record . . . ."[20]  But, at bottom, a claim "should be disposed of by summary judgment whenever an issue of law is involved and a trial is unnecessary."[21]

## IV. DISCUSSION

Millcreek argues that there is no evidence that at the time of the incident it owed Mr. Bajwa the duty of care he claims was breached.[22]  But, says Millcreek, even if it did owe Mr. Bajwa such duty, there is no evidence that it breached that

---

[18]  *Id.*

[19]  *Bobcat N. Am., LLC v. Inland Waste Hldgs., LLC*, 2019 WL 1877400, at *4 (Del. Super. Ct. Apr. 26, 2019) (quotation marks and citations omitted); *see also Brooke v. Elihu-Evans*, 1996 WL 659491, at *2 (Del. 1996) ("If the Court finds that no genuine issues of material fact exist, and the moving party has demonstrated his entitlement to judgment as a matter of law, then summary judgment is appropriate.").

[20]  *CNH Indus. Am. LLC*, 2015 WL 3863225, at *1.

[21]  *Jeffries v. Kent Cty. Vocational Tech. Sch. Dist. Bd. of Educ.*, 743 A.2d 675, 677 (Del. Super. Ct. 1999).

[22]  Def.'s Mot. for Summ. J. ¶ 6.

duty.[23]    Millcreek relies in large part on the deposition of Custom Improvers' representative, Brian Altemus.

Millcreek says the Court should grant summary judgment because, in its view, it was Custom Improvers' sole duty to maintain the premises of Millcreek Shopping Center, and in particular its parking lot.

Custom Improvers insists that Millcreek's reliance upon an alleged verbal agreement between Millcreek and Custom Improvers doesn't absolve Millcreek of its own duty to Mr. Bajwa.[24]    Custom Improvers says that Millcreek's jump from Mr. Altemus's testimony to the inference that Custom Improvers alone was "wholly responsible for the inspection, maintenance and repair of the parking lot, including the area where the alleged 'pothole' was located" is simply wrong.[25]

For his part, Mr. Bajwa argues that "whether [Millcreek] was on notice of a hazard and whether [Millcreek]'s employees should have observed the hazard during a reasonable inspection prior to [Mr. Bajwa]'s fall are material[] factual issues which should be resolved by a trier of fact."[26]

---

[23]    *Id.*

[24]    Custom Improvers' Resp. ¶ 8.

[25]    *Id.* ¶ 10.

[26]    Mr. Bajwa's Resp. ¶ 10 (D.I. 32) (citing *Wise v. Wilm. Housing Auth.*, 2003 WL 22594455 (Del. Super. Ct. Nov. 7, 2003)).

In its response, Custom Improvers spends some time arguing that *both* Defendants are due summary judgment because of Millcreek's second-argued reason. *See* Custom Improvers' Resp. ¶ 2 ("Custom Improvers joins in this aspect of Millcreek's Motion for Summary Judgment"). Citing *Taylor v. United States*, Custom Improvers posits that because Mr. Bajwa "failed to look

6

True, once there is an adequate undisputed factual record, the issue—whether Millcreek owed Mr. Bajwa the duty Mr. Bajwa (and Custom Improvers) propound—might be ripe for summary judgment.

But not here. There remain genuine issues of material fact as to the care and control of the Millcreek Shopping Center property.[27]

Under well-settled Delaware law, landowners generally have a duty "to exercise reasonable care to keep the premises safe for business invitees."[28] "This includes making safe any dangerous condition on the land which the landowner either knows about or should discover upon a reasonable inspection

---

down," Mr. Bajwa's alleged negligence was the direct, proximate, and sole cause of his injuries and therefore summary judgment should be granted to both Millcreek and Custom Improvers. *Id.* ¶ 6 (citing Apr. 11, 2022 Muhammad Bajwa Depo Tr. at 15-16; 2013 WL 3611415, at *5 (D. Del. July 12, 2013), *report and recommendation adopted*, 2013 WL 5316372 (D. Del. Sept. 16, 2013)); *id.* ¶ 7 ("summary judgment is warranted on behalf of Defendants"). In *Taylor*, the federal court granted summary judgment because that plaintiff admitted "that she would have seen the alleged dangerous condition had she been looking where she was walking." 2013 WL 3611415, at *5 (citing deposition). But that's not the state of the record here. There is no such direct and conclusive admission by Mr. Bajwa. In short, on this record, material facts remain as to whose negligence—if anyone's—caused injury here. That precludes summary judgment.

[27] *See Buford v. Ligon*, 2021 WL 5630048, at *6 (Del. Super. Ct. Nov. 30, 2021) ("Questions of duty are for the Court to decide." (citing *Naidu v. Laird*, 539 A.2d 1064, 1070 (Del. 1988) ("determining the existence and parameters of a duty is a question of law" (citation omitted)))).

[28] *Argoe v. Commerce Square Apartments Ltd. P'ship*, 745 A.2d 251, 254 (Del. Super. Ct. 1999) (citing *Hamm v. Ramunno*, 281 A.2d 601, 603 (Del. 1971)); *see Davis v. Outdoor Design Gp., LLC*, 2018 WL 2246663, at *1 (Del. Super. Ct. May 16, 2018) (discussing that landowners generally have a duty to exercise reasonable care to business invitees); *Caine v. Sovereign Prop. Mgmt., LLC*, 2017 WL 6550433, at *1 (Del. Super. Ct. Dec. 21, 2017) (same); *Johnson v. 1001 Mattlind Way, LLC*, 2012 WL 1409341, at *1 (Del. Super. Ct. Jan. 9, 2012) (same).

7

of the property."[29]

But Delaware courts recognize some exceptions to this duty. A landowner might cease "to have that duty to exercise reasonable care to maintain safe premises, such as where the owner relinquishes possession and actual control of the property to another entity."[30] In such circumstances though, the landowner must no longer be in possession and actual control of the property.[31] Millcreek argues the record clearly establishes that to be the case here. Not so.

Millcreek doesn't sufficiently establish in the record that it relinquished possession or actual control to Custom Improvers. The only evidence in the factual record to support Millcreek's contention is the deposition testimony of Mr. Altemus—he recounted that there was a verbal agreement between Millcreek and Custom Improvers to maintain the premises.[32] All that could be said of this

---

[29] *Argoe*, 745 A.2d at 254 (citing *Hamm*, 281 A.2d at 603).

[30] *Id.* at 254-55 (citing *Craig v. A.A.R. Realty Corp.*, 576 A.2d 688, 695 (Del. Super. Ct. 1989), *aff'd*, 1989 WL 180746, at *1 (Del. Feb. 7, 1990)).

[31] And by "actual control" this Court meant "actual management of the leased premises." *Argoe*, 745 A.2d at 255 (quoting *Craig*, 576 A.2d at 696). "The test that has been established by this Court to determine whether a landlord has retained 'actual control' over the premises for purposes of liability is whether the landlord has the authority to 'manage, direct, superintend, restrict or regulate [the property].'" *Scott v. Acadia Realty Tr.*, 2009 WL 5177152, at *6 (Del. Super. Ct. Dec. 8, 2009) (alteration in original) (quoting *Craig*, 576 A.2d at 695), *aff'd*, 2010 WL 5123824, at *1 (Del. Dec. 16, 2010).

[32] Jan. 27, 2023 Brian Altemus Depo. Tr. at 19

Q. Do you have a written contract with Gilpin?

A. No.

Q. The agreement between you and Gilpin was entirely verbal?

8

entirely verbal agreement is that Custom Improvers would provide yearly inspections[33] and monthly drive-throughs or walk-throughs of the shopping center.[34]

This is hardly a sufficient factual record demonstrating that Millcreek had clearly and explicitly relinquished possession of Millcreek Shopping Center (and its parking lot) to Custom Improvers.[35] And there is no other record evidence that Millcreek, pursuant to some contract or any other agreement, clearly and explicitly relinquished its possession and control of the shopping center parking lot to Custom Improvers or anyone else.[36]

Here, there remains a genuine dispute of material fact as to whether

---

A. Yes. Correct.

[33] *Id.* at 15

Q. Would you sometimes inspect the property?

A. We had yearly inspection that we would walk through, again, with Sharon, Ann, and I, myself.

[34] *Id.* at 16.

Q. Other than yearly inspections, did you perform any other inspections?

A. We would do either at the -- it was kind of, like, at our discretion. So it could either be the first week of the month or the last week of the month. We would do just, like, a drive-through, just do that, walk the property or walk inside, talk to the tenants, see if they had any problems.

[35] *See 1001 Mattlind Way, LLC*, 2012 WL 1409341, at *1-2 (finding that defendant relinquished possession and actual control by the express terms of a lease agreement because "[a]lthough Defendant may have retained some control over the interior space, such control was not managerial," and didn't influence the "day to day routine in the premises"); *see also Weiss v. Wilkins,* 313 A.2d 897, 898-99 (Del. Super. Ct. 1973) (finding that defendant was not liable for an injury caused on the premises that it regularly inspected for safety because it didn't have control of the premises and didn't interfere with the daily activities of the service station operator).

[36] *Argoe*, 745 A.2d at 255 ("[A] landlord can, by contract, absolve himself of certain legal responsibilities owed to a lessee as long as the contract is *clear and explicit*." (emphasis added) (citing *Koutoufaris v. Dick,* 604 A.2d 390, 402 (Del. 1992))).

Millcreek's duty to Mr. Bajwa has been ceded or transferred. Indeed, there is a question if any possession or actual control was given—even if partially—to Custom Improvers (or someone else) that might here supplant Millcreek's duty of care as landowner.

## V. CONCLUSION

On the record presented, Millcreek doesn't carry its burden to show that it owed no landowner duty of care to Mr. Bajwa. And neither Millcreek nor Custom Improvers have demonstrated that there remains no genuine issue of material fact as to which party's negligence—if any—caused Mr. Bajwa's fall and injury. Accordingly, Millcreek's Rule 56 summary judgment motion (and Custom Improver's attempt to obtain such judgment via its response) must be **DENIED.**

**IT IS SO ORDERED.**

**Paul R. Wallace, Judge**

Original to Prothonotary
cc: All counsel via File & Serve

10